AO 241
(Rev. 10/07)

Page 2

**PETITION UNDER 28 U.S.C. § 2254 WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

# 16-7058
## SECT. H   MAG. 5

| **United States District Court** | District: Middle District of Louisiana |
|---|---|

| Name (under which you were convicted): Adrian R. Marks | Docket or Case No.: 128118486 |
|---|---|

| Place of Confinement: Madison Parish Correctional Center | Prisoner No.: 386159 |
|---|---|

Petitioner: Adrian R. Marks

v.

Respondent (authorized person-having custody of petitioner)
Chris Stinson...Warden

TENDERED FOR FILING

The Attorney General of the State of Louisiana: Buddy Caldwell

MAY 25 2016

U.S. DISTRICT COURT
Eastern District of Louisiana
Dep. In Clerk

### PETITION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging: Twenty-Second Judicial District Court Div. "G", Washington Parish, P.O. Box 607 Franklinton, La. 70438

    (b) Criminal docket or case number (if you know):# 128118486

2.  (a) Date of the judgment of conviction (if you know): June 17, 2013 & May 30, 2013

    (b) Date of sentencing: June 17, 2013

3.  Length of sentence: 15 yrs. 15:529.1 (HB)

4.  In this case, were you convicted on more than one count or of more than one crime?  ☑Yes  ☐No

5.  Identify all crimes of which you were convicted and sentenced in this case

    Count 1: Poss w/Int to Dist Sch I (Marijuana), LRS-40:966, Length of Sentence: 15 yrs CC to each other but CS to any other sentence being served.
    Count 2: Poss w/Int to Dist Sch II (cocaine), LRS-40:967A1, Length of Sentence: 15 yrs CC to each other but CS to any other sentence being served. R.S.15:529

6.  (a) What was your plea? (Check one)

    ☐ (1)  Not guilty          ☐ (3)  Nolo Contendere (no contest)

    ☑ (2)  Guilty (Crosby Plea)  ☐ (4)  Insanity plea

2

AO 241
(Rev. 10/07)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? Plead guilty to count 1 poss 4/int (marijuana), count 2 poss 4/int to Dist Sch II (cocaine), Plead guilty to 15:529.1 multiple offender adjudication.

(c) If you went to trial, what kind of trial did you have? (check one)

☐ Jury    ☐ Judge only    N/A

7.    Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes    ☑ No

8.    Did you appeal from the judgment of conviction?

☑ Yes    ☐ No

9.    If you did appeal, answer the following:

(a) Name of court: First Cir Ct of Appeals, LA. Supreme Ct.

(b) Docket or case number (if you know): First Ct # (2014-KA-0767), Supreme Ct.# (2015-KO-0419)

(c) Result: Both Denied Relief

(d) Date of result (if you know): Both Cts Denied Relief: 1st Cir date (Dec 10, 2014) Supreme Ct. date (Jan 15, 2016)

(e) Citation to the case (if you know): Cert.

(f) Grounds raised: Initial Stop, Detention, Search, Seizure, Frisk, Prob Cause, Judicial Review, Access to Courts, Judicial Review, Sentence, 4th Amend, 14th Amend, 6th Amend.

(g) Did you seek further review by a higher state court?    ☑ Yes    ☐ No

If yes, answer the following:

(1) Name of court: LA Supreme Ct. Rehearing

(2) Docket or case number (if you know): 2015-KO-0419

(3) Result: Denied

(4) Date of result (if you know): March 4, 2016

3

AO 241
(Rev. 10/07)

(5) Citation of the case (if you know): See Supreme Ct. Rule IX, 26.

(6) Grounds raised: All previously stated

(h) Did you file a petition for certiorari in the United States Supreme Court?  ☐ Yes  ☑ No

If yes, answer the following:

(1) Docket or case number (if you know):

(2) Result:

(3) Date of result (if you know):

(4) Citation to the case (if you know):

10.    Other than the direct appeals listed above, have you previously filed any other petition, application or motions

concerning this judgment of conviction in any state court?  ☐ Yes  ☑ No

11.    If your answer to Question 10 was "YES," give the following information:

(a)    (1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes    ☐ No

(7) Result:

(8) Date of result (if you know):

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

4

AO 241
(Rev. 10/07)

Page 5

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes   ☐ No

(7) Result: _____ NO _____

(8) Date of result (if you know):

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court:

(2) Docket or case number (if you know): _____ NO _____

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes   ☐ No

(7) Result: _____ NO _____

(8) Date of result (if you know):

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First Petition:      ☑ Yes   ☐ No   ( motion to suppress - 22 JDC
(2) Second Petition:    ☑ Yes   ☐ No     Parish of Washington, LA.
(3) Third Petition:     ☑ Yes   ☐ No    1st Cir. Ct. Appeal | LA
                                         LA State Supreme Ct.

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

12.   For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

AO 241                                                                                                    Page 6
(Rev. 10/07)

**GROUND ONE:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim):

SEE ATTACHED MEMO IN SUPPORT

(b) If you did not exhaust your state remedies on Ground One, explain why:

(c)        **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?        ☑ Yes            ☐ No

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why?

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        ☐ Yes        ☑ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?                    ☐ Yes        ☐ No

(4) Did you appeal from the denial of your motion or petition?              ☐ Yes        ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☐ Yes        ☐ No

AO 241                                                                                                          Page 7
(Rev. 10/07)

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order if available):

(7) If your answer to Question (d)(4) or Questions (d)(5) is "No", explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have
used to exhaust your state remedies on Ground One:

*NONE*

**GROUND TWO:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim):

*SEE ATTACHED MEMO*

(b) If you did not exhaust your state remedies on Ground Two, explain why

(c)        **Direct Appeal of Ground Two:**

(1)        If you appealed from the judgment of conviction, did you raise this issue?        ☑ Yes        ☐        No

(2)         If you did <u>not</u> raise this issue in your direct appeal, explain why?

           (d) **Post-Conviction Proceedings:**

           (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

                    ☐ Yes        ☑ No

           (2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

7

AO 241
(Rev. 10/07)

Page 8

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?          ☐ Yes          ☐ No

(4) Did you appeal from the denial of your motion or petition?          ☐ Yes          ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?     ☐ Yes     ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order if available):

(7) If your answer to Question (d)(4) or Questions (d)(5) is "No", explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Two:

8

AO 241
(Rev. 10/07)

**GROUND THREE:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim):

SEE ATTACHED MEMO

(b) If you did not exhaust your state remedies on Ground Three, explain why

(c)     **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?   ☑ Yes      ☐ No

(2) If you did **not** raise this issue in your direct appeal, explain why

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes   ☑ No

(2) If your answer to Question (d) (1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?                      ☐ Yes    ☐ No

(4) Did you appeal from the denial of your motion or petition?                 ☐ Yes    ☐ No

(5) If your answer to Question (d) (4) is "Yes," did you raise this issue in the appeal?   ☐ Yes    ☐ No

(6) If your answer to Question (d) (4) is "Yes," state:

9

AO 241
(Rev. 10/07)

Name and location of the court where the appeal was filed

Docket or case number (if you know):

Date of the court's decision:

Results (attach a copy of the court's opinion or order if available):

(7) If your answer to Question (d) (4) or Questions (d)(5) is "No", explain why you did not raise this issue:

(e)      **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three:

**GROUND FOUR:**        *SEE ATTACHED MEMO*

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim):

(b) If you did not exhaust your state remedies on Ground Four, explain why

(c)      **Direct Appeal of Ground Four:**

(1)      If you appealed from the judgment of conviction, did you raise this issue?        ☑ Yes        ☐ No

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why? _____

(d)      **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes        ☑ No

10

AO 241
(Rev. 10/07)

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?        ☐ Yes        ☐ No

(4) Did you appeal from the denial of your motion or petition?   ☐ Yes        ☐ No

(5) If your answer to Question (d) (4) is "Yes," did you raise this issue in the appeal?   ☐ Yes        ☐ No

(6) If your answer to Question (d) (4) is "Yes," state:

Name and location of the court where the appeal was filed

Docket or case number (if you know):

Date of the court's decision:

Results (attach a copy of the court's opinion or order if available):

(7) If your answer to Question (d) (4) or Questions (d) (5) is "No", explain why you did not raise this issue:

(e)      **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Four:

11

AO 241
(Rev. 10/07)

13.     Please answer these additional questions about the petition you are filing:

(a)     Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?    ☑ Yes        ☐ No

If your answer is "No", state which grounds have not been so presented and give your reason(s) for not presenting them:

(b)     Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

14.     Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?         ☐ Yes    ☑ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available:

15.     Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal for the judgment you are challenging?         ☐ Yes    ☑ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

AO 241
(Rev. 10/07)

Page 13

16.     Give the name and address, if you know, of each attorney who represented you in the following state of the

judgment you are challenging:

(a) At preliminary hearing: *Prentiss White / LA APPELLATE Project* N/A
*P.O. Box 74385, Baton Rouge, LA 70874*

(b) At arraignment and plea: *Barry Bolton - 712 Louisiana Ave. Bogalusa, La. 70427*

(c) At trial: *Barry Bolton* "        "        "        " "        "

(d) At sentencing: *Barry Bolton* "        "        "        " "        "

(e) On appeal: *LA APPELLATE PROJECT / P.O. Box 74385*
*Baton Rouge, LA. 70874 / AND PRO SE Litigation*

(f) In any post-conviction proceeding:

(g) On appeal from any ruling against you in a post-conviction proceeding:

17.     Do you have any future sentence to serve after you complete the sentence for the judgment you are

challenging?        ☐ Yes        ☑ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the

future?        ☐ Yes        ☑ No

18. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the
one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

AO 241
(Rev. 10/07)

Page 14

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in

part that:

(1)    A one-year period limitations shall apply to an application for writ of habeas corpus by a person in custody
pursuant to the judgment of a State court. The limitations period shall run from the latest of:

(A)    the date on which the judgment became final by the conclusion of direct review or the expiration

of the time for seeking such review;

(B)    the date on which the impediment to filing an application created by State action in violation of
the constitution or laws of the United States is removed, if the applicant was prevented from filing
by such state action;

(C)    the date on which the constitution right asserted was initially recognized by the Supreme
Court, if the right has been newly recognized by the Supreme Court and made retroactively
applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been
discovered through the exercise of true diligence.

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect
to the pertinent judgment or claim is pending shall not be counted toward any period of limitations under this subsection.

Therefore, petitioner asks that the Court grant the following relief or any other relief to which petitioner is entitled.

1) Vacate and set aside convictions, remand for prompt dismissal
of all charges; Ordering Mr. Marks' release from unlawful
Custody.

2) Grant petitioners Motion To Suppress Evidence, Filed into 22nd JDC

_Aolin R. Marks_
Signature

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for

Writ of Habeas Corpus was placed in the prison mailing system on ___5/22/2016___ (month, date, and year).

Executed (signed) on ___5/20/2016___ (Date).

14

AO 241
(Rev. 10/07)

_____
Signature of Petitioner

If the person sighing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

AO 241
(Rev. 10/07)

## Petition for Relief from a Conviction or Sentence
### By a Person in State Custody

### (Petition under U.S.C. § 2254 for a Writ of Habeas Corpus)

### Instructions

1. To use this form, you must be a person who is currently serving a sentencing under a judgment against you in a state court. You are asking for relief from the conviction or the sentence. This form is your petition for relief.

2. You may also use this form to challenge a state judgment that imposed a sentence to be served in the future, but you must fill in the name of the state where the judgment was entered. If you want to challenge a federal judgment that imposed a sentence to be served in the future, you should file a motion under 28 U.S.C. § 2255 in the federal court that entered the judgment.

3. Make sure this form is typed or neatly written.

4. You must tell the truth and sign the form. If you make a false statement of a material fact, you may Prosecuted for perjury.

5. Answer all questions. You do not need to cite law. You may submit additional pages if necessary. If you do Not fill out the form properly, you will be asked to submit additional or corrected information. If you submit a brief or arguments, you must submit them in a separate memorandum.

6. You must pay a fee of $5. If the fee is paid, your petition will be filed. If you cannot pay the fee, you may ask to Proceed in forma pauperis (as a poor person). To do that, you must fill out the last page of this form. Also, you must submit a certificate signed by an officer at the institution where your are confined showing the amount of money that the institution is holding for you. If your account exceeds $_____, you must pay the filing fee.

7. In this petition, you may challenge the judgment entered by only one court. If you want to challenge a judgment entered by a different court ( either in the same state or in a different states), you must file a separate petition.

8. When you have completed this form, then the original and two copies to the Clerk of the United States District Court at this:

Clerk, United States District Court for

                                Address
                                City, State Zip Code

9. **CAUTION: You must include in this petition all the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

10. **CAPITAL CASES: If you are under a sentence of death, you are entitled to the assistance of counsel and should request the appointment of counsel.**

INTO THE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT

STATE OF LOUISIANA

Marks, Petitioner      versus        STINSON, Respondent

CASE NO. 128118486    SECTION "G"

22nd JDC/Parish of Washington

State of Louisiana

## APPLICATION FOR WRIT OF HABEAS CORPUS

### 2254

Dear Clerk,

    Enclosed please find a copy of  an Application For Writ of Habeas Corpus, Accompanying Memorandum of Law in Support, and Exhibits to be included in your docket for prompt filing. Thanking you in advance for your assistance, I remain,

Respectfully and Sincerely,

x _Adrian R. Marks_

TENDERED FOR FILING

MAY 25 2016

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

x _Adrian R. Marks_

Adrian Marks # 386159
SCC/ B-4-D
158 Treatment Plant Rd.
Tallulah, La 71282

INTO THE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT

STATE OF LOUISIANA

Marks, Petitioner   versus   STINSON, Respondent

CASE NO. 128118486   SECTION "G"

22nd JDC/Parish of Washington

State of Louisiana

## APPLICATION FOR WRIT OF HABEAS CORPUS

## 2254

### I. JURISDICTION

"District Court shall entertain an application for a writ of Habeas Corpus in behalf of a person in custody pursuant to the judgment of a State Court only on the ground that he is in custody in violation of the constitution or laws or treaties of the United States. **[FRAP 2254- Habeas Corpus Petitions]**

A person in custody pursuant to a judgment of a state court for a determination that such custody is in violation of the Constitution, laws, treaties of the U.S.; Rule 1, provides that the habeas corpus rules are applicable to petitions by persons in custody per a judgment of state court _Prieser v. Rodriquez, 411 U.S. 474, 484 (1978)_

TENDERED FOR FILING

MAY 25 2016

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

x Adrian R. Marks

Adrian Marks # 386159
SCC/ B-4-D
158 Treatment Plant Rd.
Tallulah, La 71282

### TABLE OF CONTENTS

**CASES:**                                                                    **Page #'s**

Prieser v. Rodriquez, 411 U.S. 474, 484 (1978)----------------1

State v. Crosby, 338 So.2d 584 (La. 1986)--------------------6

Blair v. Stalder, 798 So2d 132 (La. App. 1st Cir. 1/31/2001)---12

State v. Wells, 45 So3d 577 (La. 2010)------------------------14

**State v. Bourque, 622 So.2d 198, 222 (La. 1993)--------------14**

**State v. Hunt, 09-1589, p.6(La. 12/01/09)--------------------14**

**25 So 3d 646  State v. Hampton, 98-0331, p. 18 (La.4/23/99)**

**750 So2d 867, 884-------------------------------------------14**

**Gerstein v. Pugh, 95 S.Ct. 854, 420 U.S. 103 (U.S.Fla. 1975)--14**

Illinois v. Gates, 462 U.S. 213, 241-45,---------------------17

103 S.Ct. 2317, 76 L.Ed. 2d 527 (1983)-----------------------17

**U.S. Joey Marshall, 2001 U.S. Dist. Lexis, case No 07-CR-153--18**

**U.S. v. Valdez, 267 F.3d 395, 2001 U.S. App. Lexis 20127------19**

**State v. Sims, S. Ct. 851 So2d 1039 6/27/10-------------------19**

**County of Riverside v. McLaughlin, 111 S.Ct-------------------20**

**1661, 500 U.S. 44, 114 L.Ed.2d 49, 59 USLW 4413--------------20**

**State v. Johnson, 994 So.2d at 599--------------------------24**

**United States v. Gilbert, 942 F.2d 1537, 1541----------------24**

**(11th Cir. 1991) Mapp v. Ohio, 367 U.S. 643,**

**81 S. Ct. 1684, 6 L. Ed. 2d 1081,--------------------------24**

**86 Ohio Law Abs. 513 (1961))-------------------------------24**

I.

*State v. Ellington*, 96-766 (La. App. 4th Circuit 9/4/96), 680 So2d 174.--------------------------------------------------------25

*State v. Bohn*, 668 So2d756 (La. Ct. App. Cir.1996)-------------26

*Ybarra v. Illinois*, <u>444 U.S. 85</u>, 100 S. Ct. 338, <u>62 L. Ed. 2d 238</u> (1979)--------------------------------------------------28

*Harry Boyer*, 967 So2d 458 (2007) Lexis 2327 NO.07-KK-0476 **October 16, 2007**---------------------------------------------------**29**

*Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)--------------------------------------------------------30

*United States v. Williams*, 876 F.2d 1521---------------------30

1524 (11th Cir. 1989-----------------------------------------30

*{240 Fed. Appx. 859}* ***United States v. Chanthasouxat, 342 F.3d 1271, 1275 (11th Cir. 2003)***------------**30**

*Cargle v. Mullin*, 317 F.3d 1196, 1206-07 (10th Cir.2003)----------
--------------------------------------------------------------32

## Constitutional Amendments

*U.S. Const. IV.*--------------------------------------------2

*U.S. Const. XIV.*-------------------------------------------2

*La. Const. Art. 1 § 22,)*......................................................2

***Const., art. 1 § 19 (1974)***..................................................**3**

*La. Constitution, article 1 § 5*

*Constitution Amendment 4, U.S.C.A.4.*

*LSA-R.S. 14: 130. LAS-R.S. 40: 967 and 3) LSA-R.S. 40:966 (R.S.*

II.

*28 U.S.C. Sec. 2254 (d):*

### State Statutory Authorities

*Article 230.2*

*Article 881, [La. C.Cr.P.*

*La. C. CR.P. Art. 32.361.1*

### The Georgetown Law Journal Annual Review

### (2013 Edition, pp. 68-70).

*32: 411) LSA-R.S. 32:361.1(c)*

### APPENDIX

*Copies of State Court Judgments*

*Copies of Tr. exhibits.*

III.

INTO THE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT

STATE OF LOUISIANA

Marks, Petitioner      versus      STINSON, Respondent

CASE NO. 128118486      SECTION "G"

22nd JDC/Parish of Washington

State of Louisiana

## I. JURISDICTION

"District Court shall entertain an application for a writ of Habeas Corpus in behalf of a person in custody pursuant to the judgment of a State Court only on the ground that he is in custody in violation of the constitution or laws or treaties of the United States. **[FRAP 2254- Habeas Corpus Petitions]**

A person in custody pursuant to a judgment of a state court for a determination that such custody is in violation of the Constitution, laws, treaties of the U.S.; Rule 1, provides that the habeas corpus rules are applicable to petitions by persons in custody per a judgment of state court *Prieser v. Rodriquez, 411 U.S. 474, *484 (1978).*

The applicant herein has exhausted all remedies available in the State Courts.

**Remedies:**
1) Applicant did not receive a full, fair adequate hearing in the State Court proceeding;
2) Material facts were not adequately developed at the state level;
3) Denied due process of law in the State Court proceeding.

1

## II. ISSUES PRESENTED FOR REVIEW

1) Whether the initial traffic stop by the arresting officers was a mistake of law and/or an unreasonable stop of R.S. 32.361 [C]

2) Whether detention of Mr. Adrian Marks (Applicant) that exceeded the primary or initial reason to stop without probable cause constituted an "illegal detention"?

3) Whether the arresting officers' alleged Terry frisk/search for weapons of Mr. Marks exceeded the legal parameters mandated in the landmark decision, Terry v. Ohio?

4) Whether Mr. Marks' IV and XIV Constitutional Amendment rights were violated when the arresting officers' failed to obtain a neutral magistrate's determination of "probable cause" within the forty-eight (48) hour requirement as it relates to Mr. Marks' warrantless arrest?

5) Whether the probable cause determination affidavit was a patent error upon the face of the instant record?

6) Whether Mr. Marks was deprived  of access to court ( a violation of La. Const. Art. 1 § 22,) by the omissions of the trial courts' recorded items labeled TR. Pgs. 26-32 (Motion of Discovery and the Bill of Particulars Responses. Actions and/or omissions by the Clerk of Court, deputy clerk (s) or other employees omitting material relevant to the facts and evidence contained therein.

2

7) Whether the omissions of TR. Pages 26-32 constitute a constitutionally infirm guilty plea (Crosby Plea) in relation to a violation of Const., art. 1 § 19; Judicial Review).

8) Whether the trial court's finding of probable cause based upon testimony of the arresting officers alerting to a confidential informant's (C.I.) tip at the motion to suppress hearing an abuse of discretion; and whether the trial erred denying motion to suppress?

9) Whether the cocaine and marijuana evidence utilized upon Mr. Marks's prosecution and illegal search and seizure without a finding of probable cause upon its seizure.

10) Whether the judgment aggrieved attempt and/or subordinate, endorse or ratify use of state power to thwart the law of the land and of the Nation become classified as an abuse of Judicial Discretion and on/or undermining of their Judicial Oaths and pledges to uphold constitutions.

11) Whether the denial of a neutral and detached magistrate's determination of probable cause constitute false imprisonment by virtue of a C.Cr.P. art. 230.2 violations.

12) Whether a malicious prosecution took place by the trial court by not providing a probable cause determination and/or finding in lieu of the U.S. Const. IV.

3

## PROCEDURAL BACKGROUND AND CASE HISTORY

On May 23, 2012, Applicant Herein Adrian Marks was arrested and initially charged with 1) resisting arrest relative to LSA R.S. 14:108 (1 count); 2) obstruction of justice, in violation of LSA-R.S. 14: 130.1 (1)count; Possession WITD Schedule II (cocaine) in violation of LAS-R.S. 40: 967 and 3) Possession WITD Schedule I Marijuana in violation of LSA-R.S. 40:966 (1count). (TR. Pp. 124, lines 15-18). Mr. Marks was also cited for various traffic violations, i.e., No driver's license on his person (R.S. 32: 411) and violation of LSA-R.S. 32:361.1 window tinting/obscured vision/equipment.

Mr. Marks' attorney filed various motions on his behalf, including but not limited to, Motion for Discovery and the Bill of Particulars (TR., pages 26-32). The original state appointed defense counsel Darryl Sims filed the original motion for discovery. Mr. Marks later hired private counsel Barry Bolton. After Mr. Marks and attorney, Bolton combed through the State's evidence against him contained in the discovery package. However, in the interim his attorney filed a motion to suppress the evidence. Mr. Marks was ultimately offered a plea deal. Mr. Marks agreed with this plea offer. (TR pp. 80 Lines 18-32).

Mr. Marks also informed his attorney that if possible, he wanted to appeal his conviction to obtain the illegally seized

4

property, namely 1) his vehicle, 2) the $416.00 in currency seized at his arrest. Mr. Mark's attorney in turn told him that if the motion to suppress is denied, he could still appeal the ruling if he pled guilty under Crosby.

On May 30, 2013, a Suppression of the Evidence hearing was conducted. The trial court denied said motion and found probable cause. The probable cause finding was based upon testimony by the arresting officers alleging that they had received a tip from a Confidential Informant that Mr. Mark's was in possession of drugs.

Consequently, this information was withheld from the defense, even though motion for discovery and a bill of particulars was filed prior to the Suppression Hearing. The sudden introduction of this evidence by the State was not only violative of the discovery rule; such arbitrary and illegal tactics compromised Mr. Mark's due process and equal protection rights. He had a statutory and constitutional right of access to that evidence and the testimony of the arresting officers. Even more peculiar, the trial judge found probable cause based on information supplied to the State by the arresting officers relating to a "mystery" C.I. Immediately following the suppression hearing, the defense sought to accept the State's initial plea offer of ten (10) years w/eight (8) years suspended w/ two (2) years jail time with diminution benefits. (TR pp. 81, lines 1-32). This attempt was futile because the State decided

5

to withdraw the deal and offered instead a new deal of fifteen (15) years with the benefits. At that juncture, Mr. Marks via his counsel asked for a continuance in order to make a rational decision as to accepting this new plea deal. The trial court granted the continuance until the June 17, 2013 trial date. On that date, being of the mind that Mr. Marks was not interested in taking the plea deal the State proceeded to arrange for a jury trial. Consequently, with the deck obviously stacked against him, not wanting to run the risk of going to trial Mr. Marks forcibly accepted the 15-year plea deal. When he did take the deal, because of his temporary indecision, the State vindictively filed a multiple offender's bill of information against him as a second felony offender. Under pressure from the State, court and his counsel, Mr. Marks was induced to plead guilty and accept the 15-year habitual sentence. The trial court further abused its discretion by running the sentence consecutively with any other sentence Mr. Marks was also serving. Said guilty plea to the actual sentence and the multiple offender allegations were entered under the auspices of State v. Crosby, 338 So.2d 584 (La. 1986).

On July 24, 2013 pursuant to the Crosby plea agreement, an appeal was granted and the Louisiana Appellate Project was appointed to represent Mr. Marks on his direct appeal. A return date of October 9, 2013 was set for the appeal record to be filed into the appellate court. An inordinate amount of time had

surpassed the return date and after several attempts by Mr. Marks' family and him personally inquiring as to the delay, he filed a petition for writs of mandamus and prohibition seeking to have his conviction vacated if the State failed to lodge his appeal record. The mandamus was filed around mid-2014. The appeal was finally lodged; however, upon receipt of a copy of his lodged criminal appeal record, Mr. Marks noticed that TR., pp 26-32, the bill of particulars and the motion for discovery responses had been mysteriously omitted from the appeal record. The pivotal question now is, was the omission inadvertent or intentional. In any case, it does not matter simply because the omission of that evidence by the State subverted the Crosby Plea contract negotiated with the State. Mr. Marks brought this important matter to the attention of his court appointed appellate counsel of record at the time. Unfortunately, this appellate counsel dismissed it as frivolous and refused to investigate the matter. Appellate counsel then composed an appeal brief without assigning as an error, the unlodged discovery responses. This inaction by the appellate counsel placed Mr. Marks in a very precarious position. Not knowing anything at all about matters of law, he was forced to file his own pro se Subpoena Duces Tecum in an effort to obtain the unlodged evidence from the trial court. During the time of the filing of the Subpoena Duces Tecum, Mr. Marks also requested a stay order, affording him time to compose his supplemental brief. The request for the Subpoena Duces Tecum

7

was denied by the Court of Appeal-First Circuit simultaneously with the filing of Mr. Marks' petition. By that time, the appeal brief deadline had expired and the Court of Appeals-First Circuit would not accept an out of time supplemental brief by Mr. Marks.

The aforementioned unlodged evidence that was omitted from the record by State employees was an act performed without any input or fault related to Mr. Marks. The omission of that evidence subverted Mr. Marks' right to effectively raise his constitutional claims in his direct appeal, as they relate to the Crosby Plea agreement. Mr. Marks further informs this Honorable Court that he has exhausted every possible avenue in an effort to properly preserve his claims. For example, requests for rehearing, letters, writs, briefs. All of those efforts failed to yield any positive results. Mr. Marks has a constitutional right to seek and obtain relief from an arrest based upon an illegal search and seizure of evidence that the State used to prosecute. Mr. Marks also filed for a reconsideration of sentence within the thirty (30) day prescriptive period mandated by Article 881, [La. C.Cr.P. (TR, pp.52-54).That motion was also denied. Upon exhausting all of his state remedies, this Application for Habeas Corpus follows.

This is a criminal case, emanating out of a traffic stop that occurred on May 23, 2012, on Highway 10 in Franklinton, LA. The specifics are; Mr. Marks was stopped by the Franklinton Police Department officer (Officer Dorsett) who was later

8

*assisted by Louisiana State Police officer Phelps. This stop was allegedly made because of an equipment violation (tinted windows). (A 2003 Pontiac Grand Prix). Mr. Marks had a passenger in the vehicle with him at the time of the stop. The officer asked Mr. Marks for his driver's license; however, after discovering that he must have forgotten them at his residence, he related this to the police officer. The officer then requested to see all of the documents pertaining to the vehicle, i.e., registration and insurance verification, etc.*

*Mr. Marks complied with the request. Officer Dorsett then proceeded back to his unit to verify the information. In the interim, Officer Phelps of the Louisiana State Police joined him. Officer Dorsett told Officer Phelps that it seemed that passenger Roylyn Robinson appeared nervous. At this time, Officer Dorsett advised Officer Phelps to have Mr. Marks and Mr. Robinson exit the vehicle for a weapons pat down.(Tr. Pp. 117, lines 13-15) They were asked to empty their pockets. In doing so, cash and cell phones were revealed, of which were placed on the car. For still some unknown reason, the officers searched them again without any probable cause. The initial search did not produce any contraband or weapons, so there was no reason to subject the occupants to another invasion of their right not to be violated with an unreasonable search.*

*During this second search, Officer Phelps began to aggressively lean on Mr. Marks. As he continued to lean on him,*

9

and shaking Mr. Marks' shorts, a white zippered coin pouch allegedly fell to the ground. According to the incident, report Mr. Marks allegedly fell to the ground & grabbed the object and placed it into his mouth. (See TR. Pp. 117, lines 13-15; conflicting and perjured testimony by Lt. Donald Phelps). A struggle then ensued and the officers were able to retrieve the object from Mr. Marks' mouth, which contained small quantities of marijuana and cocaine type substances. Fact is that, that scenario never took place. It was just another ploy by the officers to justify their invalid Terry stop and frisk. Mr. Marks and Mr. Robinson was then transported to the Franklinton Police Headquarters and booked on various offenses. They were then transported to the Washington Parish Jail where a $50,000.00 CPS bond was placed on both of them.

The above stated events prompted a criminal matter that was assigned to Division "I" on a traffic docket # 12-TR-117878 attached to the instant docket of 12-CR8-118486. (TR.p.2). Mr. Marks filed a motion to dismiss prosecution relative to article 691 in regards to the traffic violations. The court granted and dismissed the citations.

The motion to dismiss prosecution under article 691 was also not included by the district court when the appellate record was lodged. Somehow, **_docket # 12-TR-11-7878_** had vanished from the record. This was apparently stricken from the record in an effort to cover-up the original cause for the traffic stop, with the

10

state attempting to justify and support the false allegations that it was on the uncorroborated "tip" and non-existence of a confidential informant.

A bill of information was filed against Mr. Marks citing only the charges of possession with intent to distribute Schedule I Marijuana and cocaine. All other offenses that legally formed the basis for the initial stop, i.e., resisting an officer, obstruction of justice, traffic citations (TR. p.6, Ex. D-#3). were dismissed by the Honorable Hand, judge [Div. "I"]. In his TR., pages 58-60 Motion for Appeal and the designation of the records by Mr. Marks, sought all evidence of the traffic citation rulings and the additional evidence from Division "I".

### STANDARD OF REVIEW

This Court's review of the State Court's decisions is constrained by 28 U.S.C. Sec. 2254 (d): "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted with respect to any claim that has been adjudicated on the merits in State court proceedings unless the adjudication of the claim---

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States.

11

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

ARGUMENT

ASSIGNMENT OF ERROR # 1

The agreed upon Crosby plea agreement between the State and Mr. Marks constitutes constitutionally infirm guilty plea bargain.

In the decision, Blair v. Stalder, 798 So2d 132 (La. App. 1st Cir. 1/31/2001) provides; "where a plea is not intelligent, it is infirm, if the state fails to carry it out).

In this instant case, the State negotiated a plea with Mr. Marks via Crosby. In his argument, Mr. Marks contends that his guilty plea in this instant matter is constitutionally infirm. His right to sufficiently challenge that premise has been abridged by the State's failure to lodge all of the evidence within this instant judgment on appeal when the record was lodged into the First Circuit Court of Appeal at the outset of his appeals. Moreover, the State failed to lodge Tr., pages 26-32 which included the contents of the Motion for Discovery, i.e. the Bill of Particulars responses/contents, the pro se motion to

12

dismiss prosecution relative to Article 691, evidence and rulings attributed to docket **# 12-TR117878 (Div."I").** In this case, sub judice, the State failed to keep its part of the plea agreement by refusing to provide the complete appeal record for review of the trial court's denial of the motion to suppress the evidence. This negligence by the trial court warrants reversal of the convicion & sentence. In addition, the trial court also failed to lodge evidence of the seizure of Mr. Marks' $416.00 in currency and his 2003 Pontiac Grand Prix vehicle.

This instant pro se litigant diligently pursued all of the above issues, in a good faith effort to bring to the reviewing court's attention that a travesty of justice had been performed in his case. **See, Const., art. 1 § 19 (1974).**

ARGUMENT

**ASSIGNMENT OF ERROR NO. 2**

*Probable cause was never legitimately established to justify an arrest.*

The evidence of the "mythical" confidential informant (hereinafter "C.I.") as presented via testimony of the arresting officers does not satisfy the standards set forth in the Fourth Amendment as it attaches to the U.S. Constitution and article 1, § 5 of the La. Const. 1974 in determining probable cause for a legal arrest.

In the standard of review, a trial court's decision relative to the suppression of the evidence is afforded great weight and will not be set aside unless there is an abuse of discretion. See **State v. Wells, 45 So3d 577 (La. 2010).** Additionally, the Wells court stated and reiterated the general rule that appellate courts review trial court rulings under a deferential standard with regard to factual and other trial determinations, while legal findings are subject to de novo standard of review. When a trial court makes findings of fact based on the weight of testimony and the credibility of the witnesses, a reviewing court owes those findings great deference and may not overturn those findings unless there is no evidence to support those findings. Moreover, a trial judge's ruling [on a question of fact] based upon a conclusion of credibility and weight of testimony is entitled great deference and will not be disturbed on appeal unless there is no evidence to support the ruling. **State v. Bourque, 622 So.2d 198, 222 (La. 1993).**

Furthermore, pursuant to article 703 (D), La. C.Cr.P., the State bears the burden of proving the admissibility of the evidence seized without a warrant, when the legality of the search and seizure is placed at issue by a motion to suppress the evidence. **See State v. Hunt, 09-1589, p.6(La. 12/01/09), 25 So 3d 646 citing State v. Hampton, 98-0331, p. 18 (La.4/23/99), 750 So2d 867, 884.** Gerstein v. Pugh, 95 S.Ct. 854, 420 U.S. 103 (U.S.Fla. 1975).

14

In this instant case at bar, Mr. Marks alleges that the State abused its discretion by the admissibility of this mythical information allegedly supplied to the arresting officer by this phantom C.I. This same information caused the trial judge to erroneously determine probable cause. In reality, the vague testimony of the arresting officer contained in the record at the motion to suppress hearing is void of evidence supporting the fact there was ever any confidential information or corroborating "tip". The police reports, affidavits fail to yield any proof that this C.I. ever existed; for example, there were no audio or video footage to support the alleged sequence of events. Only fraudulent and opinionated testimony of the arresting officer is included, which consequently the court relied upon to determine probable cause, subsequently denying the motion to suppress the illegally seized evidence.

Furthermore, La. Constitution, article 1 § 5 as well as Constitution Amendment 4, declare that to implement the 4th Amendment's protection against unfounded invasions of liberty and privacy, the U. S. Supreme Court requires the existence of probable cause be decided by a neutral and detached magistrate whenever possible. See exhibit "A" (facially deficient affidavit of probable cause; error patent on the face of the record. In this instant case, the State failed to meet its burden of proof that a neutral and detached magistrate exercised his authority to established probable cause in this criminal matter.

15

Moreover, this negligence by the arresting officers failing to obtain a neutral and detached magistrates probable cause for arrest violates Mr. Marks' Due Process 14th Amendment rights against illegal arrest and false imprisonment. **_See Gerstein v. Pugh, 95 S.Ct. 854, 420 U.S. 103 (U.S.Fla. 1975),_** which deals with pretrial restraints of liberty. However, the same 4th Amendment standard of illegal search and seizure is applicable to this instant case sub judice. Mr. Marks reserved his constitutional right to appellate review and habeas relief. As stated in Gerstein, supra, an arrestee may challenge the probable cause for his pretrial confinement; however, his conviction will not be vacated on grounds that he was detained pending trial without such a determination. (See Gerstein v. Pugh supra, p. 15).

Mr. Marks puts this Honorable Court on notice that it is not his intention here to challenge his pretrial confinement. Rather his emphasis is on a violation of his 4th Amendment rights against an illegal search and seizure; which if violated warrants suppression of the "fruits of a crime" in a prosecution. As is further stated in Gerstein supra, "to implement the 4th Amendment's protection against unfounded invasions of liberty and privacy, it is required that the existence of probable cause can be decided by a neutral and detached magistrate whenever possible". U.S.C.A.4. Mr. Marks also declares that his fifteen (15) year sentence in confinement for the possession of PWID Schedule I Marijuana and cocaine violates his 4th Amendment rights being confined without a determination of probable cause, whether pretrial of post-trial, he reserved appellate review. Mr. Marks'

16

current sentence is equivalent to false imprisonment. **In addition, the probable cause requirement for a legal arrest subsequent to a legitimate warrant is identical to the probable cause requirement to affect a legal warrantless arrest. Source: The Georgetown Law Journal Annual Review (2013 Edition, pp. 68-70).** In the instant case, the State of Louisiana failed to establish a constitutional guarantee right for the determination of probable cause for his arrest and the subsequent seizure of his personal property, evidence as well as the invasion of his liberty. After the officer's initial suspicions were satisfied concerning the window, Mr. Marks contends that there was no other reasonable suspicion for the stop and there was no probable cause to arrest him. Thus, he contends the evidence seized should have been suppressed as "fruit of the poisonous tree."

ASSIGNMENT OF ERROR NO. 3

The trial judge's finding of probable cause based upon the arresting officer's testimony in reference to the alleged C.I.'s tip is inconsistent with the initial reports; in satisfying the threshold of the "totality of circumstances" as set forth in the Landmark case, **Illinois v. Gates, 462 U.S. 213, 241-45, 103 S.Ct. 2317, 76 L.Ed. 2d 527 (1983).**

ARGUMENT

In this instant case, this stop was initially reported to be a result of an "equipment violation". When that reason should have satisfied the cause for the stop, which resulted in an illegal arrest, the officers shifted gears and unethically created false allegations to substantiate the arrest and seizure. (See TR., p. 132-4, lines 1-32 &

17

page 134, lines 1-32. This is evident when one looks to the testimony presented at the motion to suppress hearing, when the officer for the first time, mentioned a confidential informant's tip as the primary reason for initially stopping Mr. Marks. This is a contradiction, simply because as the following case will support, the mentioning of the critical source or reason for stopping, detaining and subsequently arresting a citizen is constitutionally required and strictly enforced by case law and jurisprudence. Moreover, the report does not state how they knew the time, day or direction Mr. Marks would be travelling or whether he would be traveling with a passenger or not. In other words, had their truly been a C.I., the window tint issue would not have been necessary.

In exhibit "B", the reports of the officer failed to mention what they were testifying to at the suppression hearing. **(See TR., pp. 166-173).** In a case that falls squarely within the parameters of this instant case, it is stated in U**.S. Joey Marshall, 2001 U.S. Dist. Lexis, case No. 07-CR-153 decided and filed 1/14/2008.** In Marshall, supra, police officers failed to mention an informant's tip within their police reports. A firearm that was found in Marshall's vehicle was suppressed as it was suggested to do by Magistrate Gorence. Although the evidence is different, the principles in the Marshall case and Mr. Marks' case parallels each other. **The government /state went on to say that, they did not mention the C.I.'s tip within their reports because they did not want to reveal the identity of the informant. The court responded, "with all due respect to protecting the identity of their informant, it would have been easy to make mention of their C.I. tip within their police reports without ever revealing or jeopardizing**

18

*the identity of their informant".(See TR. pp. 131, lines 2-18)*
Regarding the initial stop in Mr. Marks' case, according to the incident reports, the primary reason was actually an equipment violation for illegal window tint. However, as intimated earlier in this argument, the officers strangely offered up a completely new reason at the suppression hearing. In observing the court's decision in the case **U.S. v. Valdez, 267 F.3d 395, 2001 U.S. App. Lexis 20127;** the ruling was "the relevant period of lawful detention had expired, as police determined defendant had a proper  inspection sticker and legal window tinting; all evidence that followed had to be suppressed.

    In this instant case, Officer Dorsett made the initial stop, and then ordered Officer Phelps to have the occupants of the car to exit for a weapons pat down. This was done before he had completed his reason for the initial stop. Fact is neither officer had the knowledge, ability or tint meter to gauge the density of the tinted glass. The officers' continued detention of Mr. Marks and his passenger beyond the initial reason for stopping him constitutes an illegal detention. Furthermore, the weapons pat down based on the passenger's nervousness in nothing more than an inchoate and unparticularized suspicion or hunch that danger existed. A mere hunch or suspicion absent other obvious elements is insufficient to continue detaining a citizen (s). **See State v. Sims, S. Ct. 851 So2d 1039 6/27/10.** In that case, Justice Johnson dissenting provides "that the nervousness of a person is completely normal when individuals make contact with police. Police would be perfectly justified in patting down everyone they encounter based upon a nervous disposition. **"As the court of appeals determined, the law requires more than a nervous disposition to a reason to search**

19

*in anticipation of the element of danger."* Therefore, it must be concluded in this instant case that the fruits of the unreasonable and Illegal Terry frisk should be considered unlawfully seized by the officers in question. **(TR. pp. 146, lines 23-28; TR. pp. 138-139, lines 31-32, 1-13).**

<u>ARGUMENT</u>

*ASSIGNMENT NO. 4*

The failure to secure a timely determination of probable cause for Mr.

<u>Marks' warrantless arrest constitutes false imprisonment.</u>

In the words of the late Justice Antonin Scalia, Honorable U.S. Supreme Court Justice; "dissenting in **County of Riverside v. McLaughlin, 111 S.Ct. 1661, 500 U.S. 44, 114 L.Ed.2d 49, 59 USLW 4413(pp. 12-13)**,any detention beyond the period within which a warrant could have been obtained rendered the officer liable for false imprisonment.

In this instant case, the arresting officers had ample time to secure a warrant to legally search Mr. Marks' property and person incident to the stop. As the record supports, there were no extenuating circumstances that should have prompted Officer Dosrsett and Phelps to go beyond the initial stop itself. There was nothing in plain view, nor were there any suspicious signs, i.e. the smell of alcohol or marijuana to have aroused curiosity to the point of requiring further investigation on the scene. After being stopped and suspicions dispelled for the traffic offense, and discovering that everything else was in accord with applicable laws, Mr. Mark should have been allowed to continue on his journey.

20

The facts in this case point out that the only person responsible for the seized drugs and how the knowledge of them came to be, according to Officer Dorsett, was in the form of an alleged C.I.'s tip. Yet, this C.I. was never mentioned in any reports prior to the Suppression Hearing. That information was inadmissible; and the trial court's ruling denying the motion to suppress prejudiced Mr. Mark from the very start, resulting in an illegal and compromising tactic from which he could never recover.

Probable cause sufficient to issue a warrant exists when the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence may be found at the place to be searched. Art. 162. The task for a reviewing court is to insure that under the totality of the circumstances the magistrate had a substantial basis for concluding probable cause existed. Determination of probable cause does not rest on the officer's subjective beliefs or attitudes, but turns on a completely objective evaluation of all the circumstances known to the officer at the time of his challenged action. A warrantless search is per se unreasonable unless it falls within certain limited, well-delineated exceptions to the warrant requirement. Warrants are generally required to search an individual's home or person, unless the

21

exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.

Therefore, the pivotal question in this case is whether the police officers acted reasonably in the following series of events: 1) arresting Mr. Mark on an alleged tip from a C.I., whose information was not included in the initial report as a valid and legal reason for the stop; 2) that the affidavit which was unsigned by the magistrate was thus defective, in that he never substantiated probable cause for the arrest; Given only these facts, the action by Officers Dorsett and Phelps was unreasonable. However, these were no facts, only circumstances prompted by the officers to affect an arrest. The district court erred in not considering the totality of the circumstances when ruling on Mr. Marks' motion to suppress drug evidence seized off him relative to the above-described series *of* events. Moreover, it was never sufficiently established that the information allegedly received by the police informing that Mr. Marks was in possession of the evidence, was the result of a real source and not the mythical creation of the arresting officers.

In the instant, the application for probable cause to arrest was severely lacking as to critical facts that would legally persuade a magistrate to issue. The only information the officers were able to provide linking Mr. Marks to this crime is the allegation

22

that a C.I. had told them that he was in possession of drugs. In addition, the testimony of the arresting officers at the suppression hearing contradicts what was included in the affidavit. In that unsigned and defective instrument, the cause for the stop was directly related to an alleged equipment violation. See attached exhibit "A". Conversely, this equipment violation (of which Mr. Marks was ticketed for) was dismissed at traffic court (Dkt. #12-TR-117878, Hon. Hand, judge/Div. "I").(TR.p.2). This in and of itself lends overwhelming credibility to his argument against lack of probable cause for the stop and frisk. Yet, the application failed to include intrinsic facts such as 1) did the informant know Mr. Marks; 2) and if so, how did he know him; 3)or any other relevant information like physical descriptions, the model and make of the vehicle. This information only surfaced after the illegal search and seizure. It is safe to conclude for the court, that since the initial reason for the stop failed to yield any legal and justifiable cause, the officers concocted the story about a non-existent "confidential informant". This goes to the veracity of the affidavit's contents as well as the non- existence of a C.I. in this instant case.  Furthermore, there was no attempt to verify the phone call "tip". Mr. Marks argues that according to the record, there was no probable cause for the arrest and seizure based upon Officer Phelps' misrepresentations. An affidavit supporting probable cause is presumed to be valid and

23

the defendant has the burden of proving that the representations made in the affidavit are false. **State v. Johnson, 994 So.2d at 599. The Fourth Amendment protects individuals from unreasonable search and seizure. U.S. Const. Amend. IV. Evidence obtained in violation of the Fourth Amendment must be suppressed. United States v. Gilbert, 942 F.2d 1537, 1541 (11th Cir. 1991) (citing Mapp v. Ohio, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, 86 Ohio Law Abs. 513 (1961)).**

The task for a reviewing court is simply to ensure that under the totality of the circumstances the trial court abused its discretion by denying the motion to suppress the evidence obtained from the instant arrest resulting from an illegal stop, search and seizure. Considering the foregoing argument and supporting law, the lower court's denial of Mr. Marks' motion to suppress was in error.

### ASSIGNMENT OF ERROR NO.5

### THE PROBABLE CAUSE AFFIDAVIT WAS PATENTLY DEFECTIVE
#### See exhibit "A"

There were several errors contained within the contents of the affidavit accompanying the probable cause request that rendered it constitutionally and statutorily deficient. 1) The location on the affidavit states St. Tammany Parish, but the

24

*arrest and incident took place in Washington Parish; 2)The notary used to legitimize the instrument was insufficient;3) the summary of facts are inconsistent with the evidence;4) A magistrate judge never issued the existence of probable cause for Mr. Marks' arrest. These deficiencies rendered the affidavit fatally defective*

### ASSIGNMENT OF ERROR NO. 6

*The Terry Frisk conducted for Weapons and/or for Officer's Safety Resulted in an Illegal Search and the Seizure of Contraband.*

*The court concluded in State v. Ellington, 96-766 (La. App. 4th Circuit 9/4/96), 680 So2d 174. The pat down search of the defendant revealed a folding knife in his pocket. Then the officer shined a flashlight into the pocket and found a glass vial containing cocaine residue. The court concluded that the particular facts of the case were insufficient to justify the stop. The court further reasoned that even if the initial stop were justified, the subsequent search was not, because La. C.Cr.P. art. 215.1 only allowed a frisk of outer clothing for dangerous weapons. (TR. p. 184, lines 8-32)(TR. page 140-42, lines 1-32)*

*In this instant case, involving the emptying of Mr. Marks and his passenger's pockets by Officer Phelps for weapons pat*

25

*down, a command to which both complied, revealed some cash currency and a cell phone. Clearly that command and the functioning of same, would have allowed both individuals to inflict harm on the officers had they been in possession of a weapon. That action and command by the officer standing alone, unequivocally dictates that none of the arrestees posed neither any danger, or that the officer never felt threatened. Furthermore, after placing said items on the nearby vehicle, the officers performed a second search. Citing State v. Bohn, 668 So2d756 (La. Ct. App. Cir.1996); where officers exceeded the scope of a pat down search for weapons when he asked the defendant to empty his pockets). The behavior exhibited by the officers in the cited case **Bohn supra**, is identical to the behavior demonstrated by the officers in the instant case. As the court in those cases (Bohn and Ellington) concluded, the same violations occurred in the instant case; resulting in an illegal Terry Frisk.*

*In the following decisions, on writ of certiorari to the Court of Appeal, First Circuit, Parish of Lafourche, defendant challenged a reversal of the trial court's grant of defendant's motion to suppress evidence seized from his person during a stop and frisk that occurred while defendant was standing in a vicinity of a home at which a search warrant was being executed. Defendant was charged with possessing a controlled dangerous*

26

substance under La. Rev. Stat. Ann. 40:967. In this case, officer Guillot observed a white male [later identified as the defendant] standing about twenty feet from the front right corner of the mobile home. Unbeknownst to the officers, defendant, an attorney, was there allegedly to meet with his client, Bryan Tillman. Officer Guillot was about thirty feet from the defendant. Officer Guillot testified that the defendant was holding a cell phone up to his ear with his right hand and appeared to be talking. When the defendant observed Officer Guillot, he brought the phone down and begins frantically digging in his left pocket. Officer Guillot ran toward the defendant, shouting "police" and ordering him to get on the ground and remove his hand from his pocket. Officer Guillot made these commands at least four times. In Officer Guillot's experience, weapons are usually involved with drugs, and he believed defendant could have had a small weapon in his pocket.

The defendant did not remove his hand from his pocket or get on the ground as commanded. Officer Guillot then grabbed the defendant's wrist, took the defendant to the ground and handcuffed him. Officer Guillot testified that the defendant was not combative and the defendant allowed him to do what he needed to do. The defendant never said anything to Officer Guillot, did not flee and he cooperated when Officer Guillot removed his hand from his pocket and took him to the ground. Officer Guillot

conducted a patdown search of the defendant's clothing for a weapon and detected a large unknown object in defendant's pocket. He pulled the object out and discovered it was a cell phone. After removing the cell phone from the defendant's pocket, Officer Guillot continued his search. He admitted that he continued to search the defendant after he had recovered the cell phone, the singular item that could have been mistaken for a weapon. He felt "two small round objects" in the defendant's left pocket. He stated he could "not exactly" identify what those objects were. However, they felt "abnormal. In my past experiences they could have been mistaken for any kind of narcotic, crack rock, things like that." He admitted he really did not know what they were at the time. He removed all the items from defendant's left front pants pocket and visually inspected the two small round objects. He determined they were charcoal filters used for smoking crack. After the hearing on the motion to suppress, the trial court granted the motion. Relying upon Ybarra v. Illinois, 444 U.S. 85, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979). The point of interest in the Boyer case as it relates to the instant case is the fact that Officer Phelps did not have justifiable or articulable reasons to conclude that Mr. Marks posed any danger. Thus according to the Boyer ruling, which is analogous to the instant case, a second search was neither necessary nor required. This is even more understandable when one observes the fact that, Mr. Marks and Mr. Robinson had complied

28

with the officer's order to empty their pockets and place everything on the hood of the car. This second search exceeded the scope of the Terry frisk. (This point is also explained in a previous argument). *See State versus Harry Boyer, 967 So2d 458 (2007) Lexis 2327 NO.07-KK-0476/ October 16, 2007, Decided*

### ASSIGNMENT NO. 7

#### MISTAKE OF LAW AS AN AFFIRMATIVE DEFENSE

In the instant case, the Mr. Marks argues that because the officers' versions as to why he was initially stopped are conflicting and misleading, the mistake of law defense is applicable to his case. In order to stop Mr. Marks in compliance with the Terry Stop/Frisk criteria & under prevailing reasonable suspicion jurisprudence, the officers must be able to point to specific and articulable facts, which taken together with rational inferences from those facts which warrant intrusion. **FACT:** the officers in this instant case did not specify any articulable facts relative to an alleged obscured view regarding Mr. Marks' legally tinted windows. He contends that the initial stop of his vehicle did comply with La. C. CR.P., art. 32.361.1 U.S. Const. Amendment IV because the officers lacked reasonable suspicion. The provisions of La. C. CR.P., art. 32.361.1 [C] did not apply to applicant's vehicle, thus creating a mistake of law.

29

In addition, the police incident report, which contradicts the officer's testimony at the suppression hearing failed to yield enough facts to support a reasonable suspicion that Mr. Marks' and his passenger were engaging in any illegal activity at the time of the initial stop. In other words, the stop of Mr. Marks' automobile failed to comply with the principles announced in _Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)_. [TR pp. 186, TR pp. 129, lines 9-25].

As articulated earlier in this application, (the record supports Mr. Marks' position), the stop was allegedly done because of what Officer Dorsett said was "illegally tinted windows". If that was indeed the reason and his testimony at the suppression hearing would have been with consistent with that premise, then his stop would have been justified. Unfortunately, that was not the case. Mr. Marks was not only stopped, but also illegally detained, searched and frisked twice beyond the scope of the law.

The police may stop and briefly detain a person to investigate a reasonable suspicion that he is involved in criminal activity, even though probable cause is lacking." _United States v. Williams, 876 F.2d 1521_, 1524 (11th Cir. 1989). **However, although reasonable suspicion requires less than probable cause, the police must "articulate facts which provide some minimal, objective justification for the stop." Id. at 1524.**

Whatever justification that Officer Dorsett attempted to insert into his reasoning for the stop, it was severely diminished by his changed and conflicting testimony at the suppression hearing. Thus, the stop, frisk and seizure were constitutionally illegal.

Moreover, determining if a seizure violates the Fourth Amendment involves two questions: (1) was the officer's action justified at its inception and (2) was the searches reasonably related in scope to the circumstances that {240 Fed. Appx. 859} justified the interference. 1) *Terry v. Ohio*, 392 *U.S.* 1, 20, 88 *S. Ct.* 1868, 1879, 20 *L. Ed. 2d 889* (1968). With regard to the first question, great deference is given to the judgment of trained law enforcement officers on the scene; **United States v. Chanthasouxat, 342 F.3d 1271, 1275 (11th Cir. 2003).** The Court in that case has indicated that a stop may be valid, even if it was based on an officer's mistake of fact, as long as the mistake was reasonable. *Id.* at 1275, **However, an officer's mistake of law cannot provide reasonable suspicion to justify a traffic stop.**

In the instant case, it is obvious that the officer lacked reasonable suspicion. Had the stop and subsequent search and frisk been in compliance with 4th Amendment and *Terry*, *supra*, requirements, it would not have been necessary for the officers to change their stories and create false allegations at the motion to suppress hearing, in an effort to establish probable

31

cause. In fact, again as stated previously, the affidavit was not signed by a magistrate, nor was it sufficiently notarized. All of these discrepancies vividly points to the police's lack of probable cause to detain, frisk and arrest; combined with the State and Trial Court's lack of probable cause to prosecute.

Under the Terry line of cases, the reasonableness of a police intrusion is the touchstone in deciding whether a stop was valid, balancing the need of law enforcement officials against the burden on affected citizens and considering the relation of a police officer's actions to his or her reason for stopping a suspect. In this case, at bar, it is abundantly clear that Mr. Marks is a victim of an illegal and unreasonable Terry Frisk Stop and ultimate arrest in violation of his 4th Amendment Constitutional rights.

### CUMULATIVE ERRORS:

Even when no individual error is sufficiently prejudicial to warrant relief, the cumulative effect if the errors may require reversal. Cargle v. Mullin, 317 F.3d 1196, 1206-07 (10th Cir. 2003).

As discussed above, the arresting officer did not have probable cause to arrest; nor did the state did not have probable to commence prosecution in this matter, nor did the trial court have legal standing to deny Mr. Marks' motion to suppress. In combination, at least, these errors deprived Mr. Marks of a fair trial.

**_Mr. Marks Petitions the Court for Errors Patent_**

### CONCLUSION

For the foregoing reasons Mr. Marks is entitled to a writ of habeas corpus. In the alternative, he is at least entitled to an evidentiary hearing on his claim of the trial court's denial of his motion to suppress the evidence.

RESPECTFULLY SUBMITTED this 22 day of May , 2016

x Adrian R. Marks

Adrian Marks # 386159/B-4-D

158 Treatment Plant Road

Tallulah, LA 71282

### AFFIDAVIT

I, Adrian Marks do hereby declare under penalty of perjury that I am the pro se litigant in the above "Application" and that all of the facts and or allegations are true and correct to the best of my knowledge, information and belief.

THUS SIGNED AND DONE ON This 22 day of May 2016.

x Adrian R. Marks

Affiant

### CERTIFICATE OF SERVICE

I, Adrian Marks do hereby certify that I have caused a true and correct copy of the foregoing Pro Se Briefs were mailed to opposing counsel of record and the Honorable Clerk of Court of the United States District Court/ Eastern District Of Louisiana at the listed below addresses;  by placing  them in the U. S.

33

Mail Protocol at 158 Treatment Plant Road, Tallulah, Louisiana 71282, on the exact 22 Day of May , 2016.

*Adrian R. Marks*

**PLEASE SERVE:**
Hon. Clerk/U.S. District Court/ LA
500 Camp St. Rm. C-151
New Orleans, LA 70130
Hon. District Attorney/ 22nd JDC—Div. "G"
P.O. Box 607
Franklinton, LA 70438
Applicant: Adrian Marks #386159 /MCC/B-4-D
158 Treatment Plant Road/Tallulah, LA 71282

For the foregoing reasons Mr. Marks is entitled to a writ of habeas corpus. In the alternative, he is at least entitled to an evidentiary hearing on his claim of illegal and false imprisonment.

RESPECTFULLY SUBMITTED this 22 day of May , 2016

x *Adrian R. Marks*

Adrian Marks
SCC/B-4-D
158 Treatment Plant Road
Tallulah, LA 71282

34

SHREVEPORT LA 711
TUE 24 MAY 2016 AM

C-151

Mr. Adrian Marks # 386159
SCC/B-4-D
158 Treatment Plant Road
Tallulah, La 71282

Hon. Clerk of Court
United States District Court/ Eastern District Of Louisiana
500 Camp Street-Rm C-151
New Orleans, LA 70130

U.S. MARSHALS

28 - 2016 - MAY - 23 - 2016

Part A 1 of 2