## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**ADRIAN MARKS**                                      **CIVIL ACTION**

**VERSUS**                                            **NO.   16-7058**

**CHRIS STINSON, WARDEN**                             **SECTION: "H"(5)**

### <u>REPORT AND RECOMMENDATION</u>

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).    For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

*Procedural History*

Petitioner, Adrian Marks, is a convicted inmate currently incarcerated at the Madison Parish Detention Center in Tallulah, Louisiana.    He was charged with one count of possession with intent to distribute cocaine and one count of possession with intent to distribute marijuana.[1]    After selection of a jury on June 17, 2013, he withdrew his

---

[1] State Rec., Vol. 1 of 3, Bill of Information.

previously entered plea of not guilty and entered a guilty plea to both counts, reserving his right to appeal the denial of his motion to suppress the evidence pursuant to *State v. Crosby*.[2] The State filed an habitual-offender bill of information as to count one, charging him as a second-felony offender.    Marks entered a guilty plea to the multiple bill.    The trial court sentenced him on count one to 15 years imprisonment, the first two years without benefit of probation, parole or suspension of sentence, to run concurrently with his sentence of 15 years imprisonment on count two.[3]    His motion to reconsider the sentence was denied.

The trial court granted Marks's request for an out-of-time appeal.[4]    On direct appeal, he raised only one claim regarding suppression of the evidence.    The Louisiana First Circuit Court of Appeal affirmed the conviction and sentence on December 10, 2014.[5]    Marks filed a motion for extension of time along with an untimely application for rehearing in January 2015.[6]    The request for rehearing was denied on January 27, 2015.[7]    By letter dated

---

[2]  *State v. Crosby*, 338 So.2d 584 (La. 1976).

[3]  State Rec., Vol. 1 of 3, Minute Entry, 6/17/13; *see also* Trial Transcript, pp. 19-33.

[4]  State Rec., Vol. 1 of 3, Writ Application Seeking Reinstatement of Appeal Rights with Order signed November 12, 2013.

[5]  *State v. Marks*, 2014-KA-0767, 2014 WL 7004029 (La. App. 1st Cir. 12/10/14); State Rec., Vol. 1 of 3.

[6]  State Rec., Vol. 2 of 3, Motion for Rehearing; *see also* Motion for Extension to File, attached to Rec. Doc. 17 (Marks's Objection to State's Response), p. 10.

[7]  State Rec., Vol. 2 of 3.

January 29, 2015, the court of appeal returned his request for an extension unfiled, stating

that the 14-day statutory period may not be extended and that his application for a rehearing

had been denied.[8]     On February 23, 2015, he filed an application for writ of certiorari with

the Louisiana Supreme Court.     On January 15, 2016, the Louisiana Supreme Court denied

relief with no stated reason.[9]     On January 28, 2016, Marks filed a motion for rehearing with

the Louisiana Supreme Court.[10]     On March 4, 2016, the Louisiana Supreme Court issued a

ruling stating simply, "Reconsideration not considered. See Supreme Court Rule IX, § 6."[11]

On May 22, 2016, Marks filed his federal application for *habeas corpus* relief.[12]     In

his petition, Marks raises the following grounds for relief: (1) his *Crosby* guilty plea was

constitutionally infirm because the State failed to lodge all of the record evidence on direct

appeal; and (2) the trial court improperly denied his motion to suppress evidence illegally

---

[8]  Rec. Doc. 17, p. 12, Letter from Clerk of the Louisiana First Circuit.     Rule 2-18.2 (A) of the Uniform Rules–Courts of Appeal provides:     In cases governed by the Code of Criminal Procedure, an application for rehearing must be filed with the clerk on or before fourteen days after the rendition of judgment.     Section (C) further provides that no extension of time for filing an application for rehearing shall be granted.

[9]  *State v. Marks*, 2015-KO-0419 (La. 1/15/16), 184 So.3d 703, State Rec., Vol. 3 of 3.

[10]  State Rec., Vol. 3 of 3, Motion for Rehearing.

[11]  *State v. Marks*, 187 So.3d 1005 (La. 3/4/16); State Rec., Vol. 3 of 3.

[12]  Rec. Doc. 6-1, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."     *Roberts v. Cockrell*, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Marks certified that he placed the petition in the prison mailing system on May 22, 2016.

obtained in violation of the Fourth Amendment.[13]    The State contends Marks's petition is "untimely, partially unexhausted, and entirely without merit."[14]    Marks filed an objection to the State's response.[15]

*Preliminary Review - Timeliness and Exhaustion*

Initially, the Court must determine whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state-court remedies and the claims must not be in "procedural default."    *Nobles v. Johnson*, 127 F.3d 409, 419–20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b),(c)).    For the following reasons, the Court rejects the State's argument that the federal petition is untimely.

A. *Statute of Limitations*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, governs the filing date for this action because Marks filed his *habeas* petition after the AEDPA's effective date.    *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).    The AEDPA generally requires that a petitioner bring his Section 2254 claims within one year of the date on which his underlying criminal judgment becomes

---

[13]  In his federal application, Marks designated seven separate "assignments of error," all challenging the alleged unconstitutional search and seizure of evidence.    These assignments will be considered together as claim two.

[14]  Rec. Doc. 16.

[15]  Rec. Doc. 17.

4

"final."[16]      With regard to finality, the United States Fifth Circuit Court of Appeals has

explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir. 2003). However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires." *Id.* at 694; *see also Foreman v. Dretke*, 383 F.3d 336, 338 (5th Cir. 2004) (Section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).

---

[16] Title 28 U.S.C. § 2244(d) provides additional grounds, that do not apply here:

(1)      A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

    A.      the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    B.      the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    C.      the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    D.      the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

> Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review. *See Foreman*, 383 F.3d at 338–39. As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal. *See Causey v. Cain*, 450 F.3d 601, 606 (5th Cir.2006); *Roberts*, 319 F.3d at 693.

*Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008).

The Louisiana First Circuit Court of Appeal affirmed Marks's conviction and sentence on December 10, 2014.   The State contends Marks's conviction became final, for federal limitations purposes, 30 days later on January 9, 2015, because Marks neither timely sought rehearing within 14 days (La. Code Crim. P. art. 922(A)), nor timely sought writs with the Louisiana Supreme Court within 30 days of that disposition (La. Sup. Ct. Rule X, § 5(a)), and his time for seeking further direct review therefore expired.    Thus, the State submits that the federal one-year limitations period expired on January 11, 2016,[17]  rendering Marks's federal application filed on May 22, 2016, untimely.

Marks does not contest the fact that his motion for rehearing was untimely, although he attributes it to his late receipt of notice of judgment on appeal sent by his appellate attorney.[18]   In his objection, Marks alleges that he was not notified until January 5, 2015. While this scenario may *suggest* that the court of appeal mailed the notice of judgment

---

[17]  The State notes that the last day of the one-year period, or January 9, 2016, fell on a Saturday.

[18]  Rec. Doc. 17, p. 2.

rendered December 10, 2014, to his appellate attorney of record on that same date, the state court record contains no such certificate that the notice of judgment and disposition was so transmitted.[19]   The only "Notice of Judgment and Disposition" included in the state court record is dated January 27, 2015.[20]   Marks's writ application to the Louisiana Supreme Court was filed on February 23, 2015, within 30 days of that date.

Absent a timely motion for rehearing, Louisiana Supreme Court Rule X, § 5(a) provides that "[a]n application seeking to review a judgment of the court of appeal …after an appeal to that court… shall be made within thirty days *of the mailing of the notice* of the original judgment of the court of appeal."   The question left unanswered definitively by the State's response in this case and the state-court record is whether Marks timely sought review to the Louisiana Supreme Court within 30 days of the mailing of notice of the original judgment.   While the record (and indeed Marks's own allegations) strongly suggests that the court of appeal likely transmitted notice of the original judgment separately following the judgment of December 10, 2014, given the uncertainty due to the lack of documentation in the state-court record, and in an abundance of caution, the Court declines to adopt the State's argument that the instant application is untimely.   If Marks's conviction only

---

[19]   The undersigned's staff was informed by a member of the Clerk's Office for the Louisiana First Circuit Court of Appeal that the court of appeal does not maintain copies of those notices from direct appeals and therefore could not provide evidence confirming the date of notification.

[20]   See State Rec., Vol. 2 and 3.

became final 90 days after the Louisiana Supreme Court denied his writ application on January 15, 2016,[21] then the instant application filed May 22, 2016 is timely.

### B. Exhaustion

The State notes correctly that Marks has not properly exhausted the involuntary guilty-plea claim.[22] The record shows that he failed to raise the claim on direct appeal in the intermediate court and first presented the claim to the Louisiana Supreme Court. "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). The claim is therefore unexhausted and his federal petition is considered to be a mixed petition, containing both exhausted and unexhausted claims. The record discloses no good cause for his failure to properly and fully exhaust all of his claims and the Court can find none from its review of the record. *Rhines v. Weber*, 544 U.S. 269, 277–78 (2005). Normally, the Court would recommend that the petition be dismissed without prejudice to allow him to pursue

---

[21] *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

[22] The State does not argue that any claims have been procedurally defaulted. Rec. Doc. 16, p. 7.

exhaustion of his claim in the appropriate state courts.    However, the Court will instead recommend that the unexhausted claim be denied on the merits, pursuant to 28 U.S.C. §2254(b)(2).[23]

*Standards of Review on the Merits*

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").    With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

---

[23] "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."    28 U.S.C. § 2254(b)(2).

28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA. *Harrington v. Richter*,

562 U.S. 86, 102 (2011).    Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents."    *Harrington*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

*Facts*

The following facts were summarized on direct appeal by the Louisiana First Circuit:

The facts of this case were not fully developed, because the defendant entered a plea of guilty. Testimony at the hearing on the motion to suppress indicated that on May 23, 2012, at approximately 5:15 p.m., Lieutenant D. Ray Phelps, a narcotics agent with the Bogalusa Police Department, received a call from a confidential informant, who informed Lieutenant Phelps that the defendant was driving a maroon Pontiac, license plate number BKM280, and that he was traveling from Bogalusa towards Franklinton on La. Highway 10. Additionally, Lieutenant Phelps was informed that the defendant was in possession of a coin pouch and that cocaine and marijuana were contained therein. Lieutenant Phelps contacted the Franklinton Police Department, spoke with Officer Chad Dorsett regarding the lead provided by the informant, and the two agreed to meet at a nearby flooring store to wait for the defendant.

Within a few minutes, a vehicle matching the informant's description passed their location. Officer Dorsett, believing the vehicle's windows were improperly tinted, initiated a traffic stop.[24]  Officer Dorsett approached the defendant's vehicle and asked for his driver's license and registration information. The defendant complied with Officer Dorsett's request for the vehicle information, but indicated that although he had a valid driver's license, he did not have it with him. Officer Dorsett went back to his squad car to confirm the defendant had a driver's license, and he also informed Lieutenant

---

[24] Officer Dorsett later testified that the vehicle's tint was within legal parameters, and the citation he issued was "nol [prossed]."

Phelps that the passenger (later identified as Ray Lynn Robinson), appeared nervous.

Eventually, the two men were instructed to step out of the vehicle, and Lieutenant Phelps conducted a pat down on the defendant. Lieutenant Phelps grabbed the defendant's shorts, shook them, and an item fell out of the defendant's waistband and onto the roadway. The item was a small, zippered coin pouch, measuring four inches wide by two and one-half to three inches tall, with a metal zipper on the top. Officer Dorsett noticed the defendant step on the pouch once it fell, and called Lieutenant Phelps's attention to it. The defendant then reached down, grabbed the pouch, and put it in his mouth. Though Lieutenant Phelps verbally advised the defendant to stop, a struggle ensued to keep the defendant from swallowing the bag. Officer Dorsett described the defendant as being very aggressive and resistant. Next, the defendant was maced and dry-stunned with a taser, but he continued to forcefully resist. Eventually, once the defendant was subdued, the police officers were able to retrieve the item from the defendant's mouth. Lieutenant Phelps looked inside the pouch and observed twenty bags of powder cocaine and three bags of marijuana. The contents of the pouch were consistent with the information received from the confidential informant, as Lieutenant Phelps was told the defendant was carrying a coin pouch containing cocaine and marijuana. The defendant was read his *Miranda*[25] rights at the scene, and Lieutenant Phelps recalled the defendant saying "he had to try something to try to get away, he was backing up time, probation or either parole."[26]

*Analysis of Claims for Relief*

A.  *Involuntary Guilty Plea*

Marks claims that the State's omission of specific evidence in the record on direct appeal subverted the *Crosby*[27] plea agreement negotiated between him and the State,

---

[25]  *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[26]  State Rec., Vol. 1 of 3, *State v. Marks*, 2014-KA-0767 (La. App. 1st Cir. 12/10/14), pp. 1-2 (footnotes in original).

[27]  While a plea of guilty normally waives all non-jurisdictional defects in the proceedings prior to the plea, a defendant may nonetheless reserve his right to appeal an

because he was effectively unable to raise his suppression claim on appeal.    He argues essentially that his plea was rendered involuntary by virtue of the State's assurance that he would be able to appeal the denial of his motion to suppress because that bargain was not kept.    He maintains, "the State failed to keep its part of the plea agreement by refusing to provide the complete appeal record for review of the trial court's denial of the motion to suppress the evidence."[28]    The documents not lodged included pretrial discovery, namely "the contents of the Motion for Discovery, i.e., the Bill of Particulars responses/contents, the pro se motion to dismiss prosecution relative to Article 691, evidence and rulings attributed to docket #12-TR117878 (Div. "I")."[29]

Unfulfilled or unfulfillable promises can render a plea involuntary if the accused was induced to plead guilty based on such promises.    *See e.g., United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).    Federal law provides that a guilty plea is rendered involuntary if a petitioner proves that a promise was made to him in exchange for his plea of guilty and that promise was not kept.    As the United States Fifth Circuit Court of Appeals explained in *Davis v. Butler*, 825 F.2d 892, 894 (5th Cir. 1987):

> If Davis's attorney did promise a pardon within three years, it could have rendered Davis's guilty plea unknowing and involuntary. "When a defendant pleads guilty on the basis of a promise by his defense attorney or the prosecutor, whether or not such promise is fulfillable, breach of that promise

---

adverse pretrial ruling.    *State v. Crosby*, 338 So.2d 584, 586 (La.1976).

[28]  Rec. Doc. 6-1, p. 33.

[29]  *Id*. at 32.

> taints the voluntariness of his plea." *McKenzie v. Wainwright*, 632 F.2d 649,
> 651 (5th Cir. 1980). *See also McNeil v. Blackburn*, 802 F.2d 830, 832 (5th Cir.
> 1986) (per curiam); *Smith v. Blackburn*, 785 F.2d 545, 548 (5th Cir. 1986).

*Id.*

After withdrawing his not-guilty plea, Marks engaged in a plea colloquy with the trial court in which he stated that he had not been forced, coerced or intimidated into changing his plea to guilty, and had not been promised or offered anything in return for his guilty plea by his attorney, by the State's attorney, or by anyone else.[30]   Even if the trial judge's statement that "it is my understanding that this is a *Crosby* plea and the Court will grant that motion and preserve for you the right to appeal the underlying ruling on the motion to suppress the evidence,"[31]   can be considered a promise in exchange for his guilty plea, that promise was fulfilled when the appellate court reviewed the trial court's ruling denying the motion to suppress.

No promise or misrepresentation was made as to the scope of the evidence that might be allowed on direct appeal of the motion to suppress ruling, and Marks's subsequent disappointment in not being allowed to expand the record cannot serve as a basis for challenging his guilty plea.   Marks's attorney introduced pertinent record evidence during the suppression hearing (D #1-4, Affidavit of probable cause, initial complaint form, traffic

---

[30]   State Rec., Vol. 1 of 3, Trial Transcript, p. 21.

[31]   State Rec., Vol. 1 of 3, Trial Transcript, p. 28.

citation, and report of Chad Dorsett).[32]    Those documents were all included in the record

on appeal, as explained by the Louisiana First Circuit when it denied Marks's attempted

supplementation of the record:

> **MOTION DENIED**. We note that defense exhibits D-1, D-2, D-3 and D-4 are
> included in the evidence envelope filed with this Court.    We further note that
> there was no other evidence offered, filed or introduced into evidence at the
> hearing on the motion to suppress.    This Court is a court of review and not
> first impression; accordingly, this Court can not consider or review evidence
> that is not in the record before it on appeal nor receive evidence.[33]

Marks was afforded an appeal from the denial of the motion to suppress the evidence and an

examination based on the record evidence introduced by defense counsel at the suppression

hearing.    It is clear that Marks received meaningful appellate review of the denial of his

motion to suppress the evidence pursuant to his *Crosby* plea.    Marks has not shown that his

guilty plea was coerced or otherwise involuntary.    For this reason, he is not entitled to

federal *habeas* relief on this claim.

### B.  Suppression of the Evidence

Marks contends the trial court improperly denied his motion to suppress the evidence

---

[32]  State Rec., Vol. 1 of 3, Suppression Hearing (May 30, 2013), pp. 17-21.

[33]  State Rec., Vol. 2 of 3, *State v. Marks*, 2014-KA-0767 (La. App. 1st Cir. July 30, 2014)
(order denying motion for a stay order and issuance of a subpoena duces tecum).    The
appellate court likewise denied his subsequent motions to supplement the record.    Marks
argued he needed the discovery evidence to show that contrary to the testimony of officers
at the suppression hearing, no earlier mention was ever made of a "mythical confidential
informant." State Rec., Vol. 2 of 3, Motion for Supplementation of Record.    The record
reflects that defense counsel presented this argument at the suppression hearing.    State
Rec., Vol. 1 of 3, Transcript of suppression hearing, pp. 21-23, 86-87.

illegally obtained in violation of the Fourth Amendment.      The Louisiana First Circuit denied

this claim on direct review, stating:

> The Fourth Amendment to the United States Constitution and Article 1, Section 5 of the Louisiana Constitution protect persons against unreasonable searches and seizures. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained. La. Code Crim. P. art. 703(A); *State v. Jones*, 2001–0908 (La. App. 1st Cir. 11/8/02), 835 So.2d 703, 706, *writ denied*, 2002–2989 (La.4/21/03), 841 So.2d 791.

> The State bears the burden of proof when a defendant files a motion to suppress evidence obtained without a warrant. *See* La. Code Crim. P. art. 703(D). A trial court's ruling on a motion to suppress the evidence is entitled to great weight, because the court had the opportunity to observe the witnesses and weigh the credibility of their testimony. *State v. Jones*, 835 So.2d at 706.

> A search conducted without a warrant is per se unreasonable, subject only to a few specifically established and well-delineated exceptions. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). Pursuant to the investigatory stop recognized by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a police officer may briefly seize a person if the officer has an objectively reasonable suspicion, supported by specific and articulable facts, that the person is, or is about to be, engaged in criminal conduct or is wanted for past criminal acts. Louisiana Code of Criminal Procedure article 215.1(A) provides that an officer's reasonable suspicion of a crime allows a limited investigation of a person. However, reasonable suspicion is insufficient to justify custodial interrogation, even though the interrogation is investigative. *State v. Caples*, 2005–2517 (La. App. 1st Cir. 6/9/06), 938 So.2d 147, 154, *writ denied*, 2006–2466 (La. 4/27/07), 955 So.2d 684. Reasonable suspicion for an investigatory detention is something less than probable cause and must be determined under the specific facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. *State v. Belton*, 441 So.2d 1195, 1198 (La. 1983), *cert denied*, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); *State v. Harris*, 2011–0779 (La. App. 1st Cir. 11/9/11), 79 So.3d 1037, 1041.

As the Louisiana Supreme Court indicated in *State v. Smith*, 2000–1838 (La. 5/25/01), 785 So.2d 815, 816 (per curiam), "[a]n anonymous tip may provide probable cause for an arrest," citing *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), or "reasonable suspicion for an investigatory stop," citing *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), "if it accurately predicts future conduct in sufficient detail to support a reasonable belief that the informant had reliable information regarding the suspect's illegal activity." To determine whether the information furnished by a confidential informant provides probable cause for an arrest or search, a court must utilize a "totality of the circumstances analysis" and consider, among other things, the informant's veracity, facts relating to the informant's basis of knowledge, and corroboration of the informant's information. *Gates*, 462 U.S. at 232–33, 103 S.Ct. at 2329–30; *State v. Lumpkin*, 2001–1721 (La. App. 1st Cir. 3/28/02), 813 So.2d 640, 644, *writ denied*, 2002–1124 (La. 9/26/03), 854 So.2d 342.

The decision to stop an automobile is reasonable if the police have probable cause to believe a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996). Further, during a legitimate traffic stop, an officer may order the driver to exit the vehicle for the officer's safety. *Pennsylvania v. Minims*, 434 U.S. 106, 110–11, 98 S.Ct. 330, 333, 54 L.Ed.2d 331 (1977) (per curiam). In addition, an officer may conduct a pat down of the driver and any passengers, if he has a reasonable suspicion that the person is armed and dangerous. *Arizona v. Johnson*, 555 U.S. 323, 327, 129 S.Ct. 781, 784, 172 L.Ed.2d 694 (2009). In determining the lawfulness of an officer's pat down of a suspect, a court must give due weight, not to an officer's "inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." The officer need not be absolutely certain that the individual is armed; the issue is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883.

The facts of this case are similar to those in *Lumpkin*. In that case, a Bogalusa Police Department officer was informed by a confidential informant that the defendant would be traveling into Bogalusa between 8:30 and 9:00 p.m. with 100–200 "hits of LSD." The informant also indicated that the defendant was a white male and that he would be driving in from the Bush area on Highway 21 in a white Pontiac Grand Am. The police officer set up surveillance and a few

minutes later, a white Pontiac Grand Am was observed coming from Bush toward Bogalusa. It was followed and pulled over, with the defendant identified as the driver. After the police searched the vehicle for approximately five minutes, LSD was discovered. *Lumpkin*, 813 So.2d at 642–43.

In *Lumpkin*, the defendant contended the trial court erred in denying his motion to suppress, arguing that the police failed to obtain a search warrant and that the search was not conducted pursuit to an exception to the warrant requirement. This court noted that the confidential informant correctly described Lumpkin and predicted his future conduct as follows: (1) a white male, (2) named Brian Lumpkin, (3) driving a white Pontiac Grand Am, (4) coming from Bush, La., (5) going to Bogalusa, La., (6) traveling on La. Hwy. 21, (7) on July 19, 1999, (8) at about 8:30–9:00 p.m.—actually 10:00 p.m. This court concluded that "[u]nder the totality of the circumstances, the information given by the CI, as corroborated, justified an investigative stop. When the officers confirmed the identity of Lumpkin, ... they had probable cause to arrest him and search the vehicle." *Lumpkin*, 813 So.2d at 649 (citations omitted).

The court in *Lumpkin* clearly stated the same issue as in the instant case: "The question in this case is whether the future conduct of Lumpkin predicted by the CI was in sufficient detail that, when verified, the police officers had probable cause to believe that illegal activity was taking place and that Lumpkin should be arrested and/or his vehicle searched." *Lumpkin*, 813 So.2d at 649. Here, as in *Lumpkin*, the confidential informant correctly described the defendant's future conduct. The informant indicated to Lieutenant Phelps that the defendant would be driving a maroon Pontiac, gave an exact license plate number, and reported that the defendant would be traveling along Highway 10 from Bogalusa towards Franklinton on May 23, 2012. Further, the informant told Lieutenant Phelps that the defendant was carrying a coin pouch, which contained both cocaine and marijuana. Because the informant's tip was verified and corroborated, once the police officers confirmed the identity of the defendant, this alone created reasonable suspicion for an investigatory stop. *See Lumpkin*, 813 So.2d at 649. In its reasons for denying the motion in this case, the district court noted:

Now regarding the stop of the vehicle and the subsequent search which resulted in the initial abandonment of the powder cocaine and marijuana, this Court does find that this was a vehicle search and thus controlled by the line of cases that stems from those specific [warrantless] cases. I likewise find that

there was in fact an exigency in that [the] item was dropped and then was in danger of being consumed.

I find that this was a situation where police officers relying upon the reliability of a C.I. had to wait to see whether or not further details of what the C.I. said would become manifest. That in doing so, the statements by the C.I., particularly with regard to factors about what would be found, who would have it, the type of vehicle and the point at which the vehicle was likely to arrive, were all corroborated. And in that this Court finds that probable cause existed for the search and therefore I deny the motion to suppress the evidence.

Furthermore, the traffic stop of the vehicle driven by the defendant was supported by probable cause to believe he had violated La. R.S. 32:361.1.[34]  *See State v. Wyatt*, 99–2221 (La. App. 4th Cir. 9/27/00), 775 So.2d 481, 483 ("[police officer] was therefore justified in stopping the car to further investigate a possible [window-tinting] infraction"); and *State v. Pena*, 43,321 (La. App. 2nd Cir. 7/30/08), 988 So.2d 841, 847 ("Even if the trooper had later determined that the degree of tint on the windows was acceptable, he was justified in stopping the vehicle to further investigate a possible infraction.")

When a district court denies a motion to suppress, factual and credibility

---

[34]  La. R.S. 32:361.1(B) reads in pertinent part as follows:

[N]o person may operate a motor vehicle with any object or material placed on or affixed to the front windshield or to front side windows of the vehicle so as to obstruct or reduce the driver's clear view through the front windshield or front side windows, nor place on or affix to the front windshield or the front side windows of a motor vehicle, any transparent material if the material alters the color or reduces the light transmission of the windshield or front side windows.

Furthermore, La. R.S. 32:361.1(C)(1) notes that these provisions do not apply to:

[a] sun screening device when used in conjunction with automotive safety glazing materials on the front side window, with a light transmission of at least forty percent, all tolerances included, side window behind the driver with a light transmission of at least twenty-five percent, all tolerances included, and rearmost windows with a light transmission of at least twelve percent, all tolerances included. All sun screening devices shall not have a luminous reflectance of more than twenty percent.

> determinations should not be reversed in the absence of a clear abuse of the district court's discretion, i.e., unless such a ruling is not supported by the evidence. *See State v. Green*, 94–0887 (La. 5/22/95), 655 So.2d 272, 280–81. As a general rule, this court reviews trial court rulings under a deferential standard with regard to factual and other trial determinations, while legal findings are subject to a de novo standard of review. *State v. Hunt*, 2009–1589 (La. 12/1/09), 25 So.3d 746, 751.
>
> Considering the above, we find no error or abuse of discretion in the district court's denial of the motion to suppress the evidence. Accordingly, this assignment of error is without merit.[35]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.

As the State notes in its response, Fourth Amendment violation claims generally are not cognizable on federal *habeas* review.    *Stone v. Powell*, 428 U.S. 465 (1977).    In *Stone v. Powell*, 428 U.S. 465 (1976), the United States Supreme Court held: "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial."    *Id.* at 494 (footnote omitted); *see also Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002).    The *Stone* bar applies even if the state court rulings regarding the Fourth Amendment claims were in fact erroneous.    *Swicegood v. Alabama*, 577 F.2d 1322, 1324 (5th Cir. 1978).

A "full and fair" hearing as contemplated by *Stone* refers to thoughtful consideration by the factfinder and at least the availability of meaningful appellate review by a higher state

---

[35]   *State v. Marks*, 2014 WL 7004029, at *2-5 (footnotes in original).

court.   *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986); *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977).   The "opportunity" for full and fair litigation exists as long as the state provides the petitioner with processes by which he can obtain full and fair consideration, without regard to whether he actually avails himself of those processes. *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978) ("An 'opportunity for full and fair litigation' means just that: an opportunity."); *see also Janecka*, 301 F.3d at 320.

In the instant case, Marks asserted a Fourth Amendment claim in the state district court, where he was afforded an evidentiary hearing, and he challenged the denial of that claim in both the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court. Because he was afforded a full and fair opportunity to litigate his Fourth Amendment claim in the state courts, *Stone* bars this Court from considering that claim.

## <u>RECOMMENDATION</u>

**IT IS RECOMMENDED** that Marks's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United*

*Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[36]

New Orleans, Louisiana, this ___20th___ day of ___January___ 2017.

_____

**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[36] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.